UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| EDINBURG CISD, *et al*, § § Petitioners, § VS. § § ARMANDO OLMEDO; aka OLMEDO- § TREVINO, § § Defendant. § | CRIMINAL ACTION NO. 2:12-CR-68-1 (CIVIL ACTION NO. 13-CV-302) |

### ORDER GRANTING MOTION TO REINSTATE, DENYING MOTION TO VACATE, SET-ASIDE OR CORRECT SENTENCE AND DENYING A CERTIFICATE OF APPEALABILITY

Before the Court is Armando Olmedo's (Olmedo) motion requesting reinstatement of his motion to vacate, set-aside or correct statement pursuant to 28 U.S.C. § 2255. The Court appointed counsel for Olmedo and held an evidentiary hearing. After hearing evidence on Olmedo's motion to reinstate and on the full scope of his § 2255 motion, the Court grants the motion to reinstate, but denies relief on the motion to vacate, set aside, or correct judgment pursuant to § 2255 motion and denies him a certificate of appealability.

### I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 2255.

### II. FACTS AND PROCEEDINGS

Olmedo was arrested in January 2012 after an investigation revealed his participation in a long term conspiracy to harbor and transport unlawful aliens. An indictment was issued before a warrant was issued for Olmedo's arrest which charged him in Count One with violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(i). The

indictment named 37 persons. The case was also related to another multi-defendant case pending in McAllen, Texas.

Olmedo made his initial appearance in federal court on January 30, 2012. He was appointed counsel on February 2, 2012. Retained counsel appeared for Olmedo on February 6, 2012. D.E. 89. Olmedo was detained without bond. D.E. 148. A First Superseding Indictment was returned on February 22, 2012. D.E. 188. The charge of conspiracy against Olmedo did not change, other than to add more co-defendants to Count One.

Olmedo was arraigned on the First Superseding Indictment in early March 2012. Later that same day, Olmedo pled guilty pursuant to a plea agreement to Count One of the First Superseding Indictment. D.E. 307, 328. In exchange for his truthful testimony and truthful communication with Probation, and his guilty plea to Count One, the government agreed to recommend that Olmedo receive maximum credit for acceptance of responsibility and to recommend a sentence within the applicable guideline range. D.E. 324, ¶¶ 1, 2. As part of his plea agreement, Olmedo agreed to forfeit real property and $82,000 cash found in his home. *Id.*, ¶ 11.

In preparation for sentencing, the Probation Department prepared a Presentence Investigation Report (PSR). D.E. 610. The PSR concluded that Olmedo was the head of an organization that operated in various forms from 2002 through 2012, smuggled approximately 4800 aliens, and grossed approximately $19,200,000 over the ten-year period. Olmedo recruited drivers and worked with persons running stash houses. *Id.*, ¶¶ 5-52. Probation concluded that Olmedo had attempted to obstruct justice by threatening his former girlfriend with harm after she reported Olmedo to the authorities for alien smuggling activities. *Id.*, ¶ 55.

Olmedo's base offense level was twelve. It was enhanced by nine levels because the conspiracy smuggled more than 100 aliens, increased by another two levels for transportation of unaccompanied minors, two more levels because three firearms were found in Olmedo's home, and another two levels for intentional or reckless creation of a substantial risk of harm to those aliens who were smuggled in truck beds, tractor-trailers and the trunks of cars. *Id*., ¶¶ 59. Olmedo was considered to be an organizer/leader which further enhanced his offense level by four. *Id*., ¶ 62. The Probation Department included another two level increase for obstruction of justice and did not credit Olmedo with acceptance of responsibility because he lied to the Probation Department about his employment. *Id*., ¶¶ 63-65. Olmedo's total offense level was calculated to be 33.

Olmedo had one criminal conviction for terroristic threat which arose from his threats against his former girlfriend after she reported him to the authorities. He was sentenced to 12 months probation and was still on probation at the time he was charged in this case. *Id*., ¶¶ 70-72. Olmedo's criminal history category was II. His sentencing guideline range was 151 to 188 months, but with a statutory maximum sentence of 120 months. *Id*., ¶¶ 89-90.

Olmedo appeared for sentencing on May 24, 2012. D.E. 939. His counsel, Terry Shamsie, filed objections to the PSR before sentencing. D.E. 655. Olmedo denied he was ready for sentencing, complained that he saw things that were not right in the PSR and that he needed another attorney because the one he had was not helping him enough. *Id*., pp. 4-5. Olmedo also objected to the Court conducting sentencing by video conference. *Id*., p. 12. The Court reset sentencing for November 2012 to allow Olmedo to hire substitute counsel. *Id*., p. 12.

Sentencing resumed in November 2012. Olmedo appeared in person with new counsel, John Parras. D.E. 1070, p. 3. Parras filed objections to the PSR. D.E. 953, 954. The Court

determined that Parras' objections to the PSR were late-filed and refused to consider them. *Id*., pp. 6-9. The Court proceeded on the objections that previous counsel filed. *Id*., pp. 8-9. Parras argued that the firearms enhancement was improperly applied, that the guns were at Olmedo's residence, no aliens were ever connected to that location, and there was no evidence that the guns were ever used in connection with smuggling efforts during the ten year period. *Id*., pp. 10-11. The government did not oppose the objection and the Court removed the firearms enhancement. *Id*., p. 11.

Counsel's next objection was to the removal of acceptance of responsibility. *Id*., pp. 11-12. When Olmedo was interviewed by Probation, he told them that he worked for Maxim, an egg factory, and was employed doing the yards and packing eggs. When Probation checked with the employer, the Probation Officer learned that someone else was employed at Maxim's using Olmedo's identification. Olmedo reported the income to the IRS and he and the undocumented worker who was using Olmedo's identification shared the tax refund. As a result, Probation recommended that Olmedo not be given credit for acceptance of responsibility. Counsel argued that the misrepresentation had nothing to do with the offense conduct, but the Court rejected the argument and found that Olmedo breached the plea agreement by misrepresenting his employment to Probation, resulting in a loss of credit for acceptance of responsibility. D.E. 1070, pp. 11-13.

Counsel urged the Court to sentence Olmedo to nine years or less to be consistent with the sentences of Olmedo's co-defendants. The Court sentenced Olmedo to the statutory maximum sentence of 120 months. *Id*., pp. 17-18. The Court then advised Olmedo that he could appeal his sentence by filing a notice within 14 days and the procedure to qualify for court

appointed counsel. *Id*., p. 18. Olmedo filed an appeal, but later withdrew his appeal. D.E. 1006, 1008. He then filed a timely motion to vacate, set-aside or correct sentence. D.E. 1056.

After Olmedo's motion to vacate was fully briefed, the Court appointed counsel for Olmedo and scheduled the motion for an evidentiary hearing. Shortly before the scheduled hearing, appointed counsel filed a motion to withdraw the § 2255 motion, which the Court granted on March 20, 2014. D.E. 1004, 1105. On May 15, 2014, Olmedo filed a *pro se* motion seeking reinstatement of his § 2255 motion which the Court construed as a Rule 60(b) motion. New counsel was appointed and the matter was set for hearing. D.E. 1114.

During the evidentiary hearing, Carlos Villarreal, Terry Shamsie and John Parras, former counsel for Olmedo testified, as did Olmedo. Olmedo testified that he did not understand the Spanish spoken by the interpreters Shamsie used, nor did he understand Parra's Spanish. Olmedo is from Mexico and all of the interpreters and Parras spoke Tex-Mex or border Spanish. Olmedo testified he understood the Court's interpreters and the Spanish spoken by present counsel. D.E. 1148, pp. 66-67, 70-81.

Olmedo claimed he was confused during his telephone conversation with the Probation Officer. *Id*., p. 76. He otherwise testified consistently with his motion. Olmedo has lived in the United States and in South Texas since 1983. He claimed that Villarreal did not get his permission to withdraw his § 2255 motion. *Id*., p. 72.

Villarreal testified that he met with Olmedo, went over the PSR and sentencing transcripts, and explained to Olmedo that the firearms enhancement was not included in his sentencing calculation. Villarreal explained to Olmedo that he did not believe the motion had merit and due to the allegations, was concerned that Olmedo could be prosecuted for perjury.

Counsel recommended to Olmedo that he withdraw the motion and he thought Olmedo agreed. Villarreal filed the motion shortly before the scheduled hearing. *Id*., pp. 4-11.

Shamsie testified that he does not speak Spanish. On his first visit with Olmedo, he took with him a Spanish speaking immigration attorney. On his other visits, he either used an investigator or another lawyer who spoke Spanish. Shamsie did not attend the meeting with Probation, but he attended his client's debriefing. At the debriefing, the government used agents to translate, which meant Shamsie was unable to converse privately with his client during the debriefing. Shamsie also testified he did not know about the egg factory employment issue until after he received the PSR. He thought perhaps that Olmedo was confused by his telephone interview with the Probation Officer who spoke to him through an interpreter. *Id*., pp. 15-36.

Parras testified he was hired by Olmedo's family, that he met with him, reviewed the government's discovery, and conferred with Olmedo regarding the objections to the PSR he thought were justified. He has been speaking Spanish all his life and as far as he knows, his Spanish speaking clients do not have difficulty understanding him. *Id*., pp. 37-39.

At the end of the hearing, the Court denied the motion to vacate, set-aside or correct sentence.

### III. MOVANT'S ALLEGATIONS

Olmedo's motion to reinstate raised a single claim that counsel did not ask Olmedo whether Olmedo wanted to withdraw his motion to vacate. D.E.1111, p. 3.

Olmedo's original § 2255 motion raised multiple grounds of ineffective assistance of counsel directed at Shamsie who originally represented him. Olmedo complains that 1) he and Shamsie could not communicate well with each other due to the language barrier, 2) counsel advised him to plead guilty because if he did not, he would get a longer sentence, and 3) counsel

did not explain that the most time Olmedo could get was ten years imprisonment. Olmedo argues that if he understood that the maximum sentence was ten years, he would have gone to trial. He further argues that he would have gone to trial unless the government "provided [him] with a plea agreement that would ensure a lower sentence than 10 years." *Id*., p. 4.

Olmedo claims that Shamsie assured him that Olmedo would not get sentencing enhancements for weapons or obstruction of justice and that counsel would advise the Court of Olmedo's remorse so that he would qualify for acceptance of responsibility. Olmedo further argues that if he had known that Shamsie would abandon him at sentencing, Olmedo would have gone to trial. Additionally, Olmedo claims that had Shamsie represented him adequately and properly explained things to the Probation Department, Olmedo would have received acceptance of responsibility and a lower sentence.

Olmedo complains that Parras, his sentencing counsel, promised he would challenge the enhancements for weapons and obstruction of justice and seek reinstatement of credit for acceptance of responsibility. Parras assured Olmedo that there was no need to withdraw his guilty plea. Olmedo argues that Parras did not perform as promised and but for Parras' conduct, Olmedo would have been able to show the Court that the enhancements were not appropriate and he deserved acceptance of responsibility. *Id*., p. 8.

### IV.   ANALYSIS

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28

U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). "[A] collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

**B.**     **Rule 60(b) Motion to Reinstate**

After hearing the testimony of both Olmedo and his counsel, the Court granted Olmedo's motion to reinstate. The motion was filed timely and complains of a procedural irregularity that prevented the Court from deciding the merits. Fed. R. Civ. P. 60(b)(6). The Court does not find that counsel was ineffective, but in the interest of justice considers the merits of Olmedo's original motion.

**C.**     **Involuntary Plea**

Olmedo argues he would have gone to trial on the conspiracy charge against him if he had known that his statutory maximum sentence was 120 months. During the evidentiary hearing, Olmedo complained that his original retained counsel did not explain things to him and did not communicate with him effectively because the interpreters counsel used spoke border Spanish, not Mexican Spanish. The Court construes Olmedo's contentions to include a claim that his guilty plea was involuntary.

Even if counsel failed to explain the maximum statutory punishment of 10 years on Count One of the indictment, the federal magistrate judge and this Court advised Olmedo three separate times before Olmedo entered his guilty plea that the maximum statutory sentence was ten years. When Olmedo was arraigned on February 6, 2012, the federal Magistrate Judge

advised Olmedo of the maximum punishment of "*not more than ten years* imprisonment," up to 3 years supervised release, and a $100 special assessment. Olmedo testified that he understood. February 6, 2012, ERO 09:14:53/09:15:53 (emphasis added). During the arraignment, the Magistrate Judge used a court interpreter.

The following month, Olmedo was arraigned on the Superseding Indictment. D.E. 1118. The federal Magistrate Judge again told him, through an official court interpreter, he was subject to a *maximum* prison sentence of ten years. *Id*., p. 16.[1]

Additionally, at rearraignment, before entering his guilty plea, this Court (through an official court interpreter) again advised Olmedo that he was subject to a maximum sentence of ten years on Count One. March 2, 2012, ERO at 2:00:53. Olmedo testified he understood the punishment. *Id*., p. 2:02:24. The Court also reviewed potential sentencing enhancements during rearraignment such as leader/organizer, transporting unaccompanied juveniles, reckless endangerment by the mode of travel, and 100 or more persons transported. *Id*., at 2:03:21/2:04:50. Olmedo testified that he understood the concepts and had discussed them with his counsel. *id*., at 2:06:30.

Olmedo identified his plea agreement and testified that his counsel arranged to have it read to him in Spanish. Olmedo discussed it with counsel before he signed the agreement. *Id*., at 1:59:10/1:59:57. Olmedo testified he understood the written plea agreement that stated his sentence would be calculated using the Sentencing Guidelines Manuel; he understood that the government did not speak for the Court, that the Court would determine his sentence and could disregard the government's recommendations. The government committed only to recommend a

---

[1] "The maximum potential penalty each of you faces for count l is not more than 10 years in prison, a fine of no more than $250,000; no more than three years of supervised release. . . ." *Id*. The magistrate Judge asked Olmedo if he understood the maximum punishment. Olmedo responded, "Yes." *Id*., p. 18.

sentence within the applicable guideline range and to recommend maximum credit for acceptance of responsibility. *Id.* at ¶ 2.

The Court further advised Olmedo during rearraignment, "I want to make sure you understand that I am not a party to this agreement. It's not binding to me in any way, and you won't know whether I will follow any part of the agreement or recommendations until time of sentencing when it's too late to have any right to withdraw your plea. In fact, as soon as you enter your plea you have no right to withdraw it, even if the sentence is more severe than you expected." *Id.*, at 1:59:59/2:00:32. The Court further admonished Olmedo,

> THE COURT: I want to make sure you understand your attorney's opinion of the guidelines are not necessarily that of mine, and none of us are going to know what your sentence is going to be until we get to sentencing when you and the U.S. Attorney have had an opportunity to challenge the facts reported by the Probation Department. Then, after it's been determined what Advisory Guideline applies to a case, I have the authority to impose a sentence that is more severe or less severe than that called for by the advisory Guidelines. And further, I want to make sure you understand that the final decisions of what your sentence will be rests with me, not with the U.S. Attorney, who doesn't represent or speak for the Court in this case. Do you understand these matters. . .
> THE COURT: Mr. Olmedo?
> DEFENDANT OLMEDO: Yes.

*Id.* at 2:10:44/2:11:26. Olmedo testified he understood and his plea was entirely voluntary. *Id.*, at 2:11:47.

Olmedo's sworn statements in open court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge*, 431 U.S. at 74)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). Furthermore, a signed, unambiguous plea agreement is accorded great evidentiary weight when deciding if the

plea is entered voluntarily. *See Bonvillan v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986). The Court finds Olmedo's guilty plea was voluntary.

**C.** **Claims of Ineffectiveness of Counsel**

    1. *Standard for ineffectiveness of counsel*

An ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to some increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

    2. *Alleged ineffective assistance at sentencing by Terry Shamsie*

Olmedo alleges that at the Call for Sentencing, Shamsie, his initial retained counsel, was ineffective on the grounds that Shamsie allegedly promised Olmedo that there would be no

enhancements to Olmedo's sentence for firearms or obstruction of justice and Olmedo would get acceptance of responsibility. Counsel filed objections to the PSR on these grounds, but during the initial sentencing hearing, Olmedo told the Court he wanted another lawyer and did not consent to be sentenced by video-conference. The Court recessed the hearing and rescheduled to allow Olmedo to hire substitute counsel. As a result, Olmedo suffered no prejudice from Shamsie's allegedly ineffective performance. Olmedo has not demonstrated ineffective assistance on these grounds.

### 3. *Alleged ineffective assistance at sentencing by John Parras*

Olmedo complains that Parras promised he would challenge the enhancements for firearms and obstruction of justice. Parras agreed to seek reinstatement of credit for acceptance of responsibility, and assured Olmedo that there was no need for Olmedo to withdraw his guilty plea. Olmedo complains that Parras did not do what he promised and that but for Parras' conduct, Olmedo would have been able to show the Court that the enhancements were inappropriate and he deserved acceptance of responsibility.

Parras filed objections to the enhancement for firearms and the failure to grant acceptance of responsibility. D.E. 954. Although Parras requested leave of Court to file his objections late, the Court denied the motion, but allowed counsel to argue from previously filed objections by Shamsie. D.E. 1070, p. 6-9. Olmedo ultimately was sentenced without the enhancement for firearms. *Id.*, pp. 9-11.

Parras argued for granting acceptance of responsibility, but the Court overruled his objection. The Court explained that acceptance of responsibility required Olmedo to truthfully respond to the Probation Department. Instead, Olmedo claimed that he worked at the egg production factory when he had provided his own documents to someone else who was

employed there. Olmedo also participated in tax fraud when he claimed the income from Maxim and collected a tax refund that he split with the undocumented worker. *Id*., p. 12-14.

Parras did not object to the enhancement for obstruction of justice. The obstruction was predicated on Olmedo's conviction for making terroristic threats to his former girlfriend when he believed she informed authorities of his alien trafficking operation.

Even after most of his objections were overruled, counsel continued to urge a below 10 year sentence. *Id*., p. 16-17. The Court sentenced Olmedo to the statutory maximum sentence of 120 months.

Parra's late-filed objections did not harm Olmedo because previous counsel filed similar objections. Parras advocated every objection Olmedo claims Parras promised he would file, except obstruction of justice.

Parras testified at the hearing, that he did not promise Olmedo a specific sentence, that he told Olmedo he would look at the government's case and advocate for him at sentencing as to the enhancements that were improper. Parras testified that after his review of the case, obstruction of justice was warranted, and as a result, he did not object on that ground.

Olmedo has not carried his burden to demonstrate prejudice from counsel's allegedly ineffective performance at sentencing. He has provided the Court with no evidence that would have reduced his sentence. Indeed, the Court advised Olmedo's counsel, "If it had been possible to give him a higher sentence, I would have." *Id*., p. 19.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Olmedo has already filed a notice of appeal. The § 2255 Rules instruct this

Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Olmedo is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

Olmedo's Rule 60(b) motion (D.E. 1111) is GRANTED in the interest of justice. Olmedo's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 1046) is DENIED and he is also denied a Certificate of Appealability.

SIGNED and ORDERED this 20th day of February, 2015.

_____
Janis Graham Jack
Senior United States District Judge